UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RXSALES PRESCRIPTION SALES
COMPANY, LLC,

               Plaintiff,

    v.

BLUE FROG MOBILE, INC., et al.,

               Defendants.

CASE NO. C06-333JLR

ORDER

## I.   INTRODUCTION

This matter comes before the court on Plaintiff's motion for a preliminary injunction (Dkt. # 2) and Defendants' motion to file a supplemental declaration in support of their supplemental response (Dkt. # 20).  Having read the papers filed in connection with these motions, and having heard oral argument, the court GRANTS Plaintiff's preliminary injunction motion and GRANTS Defendants' motion to file a supplemental declaration.[1]

## II.   BACKGROUND

The court finds the following facts relevant to its conclusions of law:

Plaintiff RxSales Prescriptions Sales Company, LLC ("RxSales") and Defendant Blue

---

[1]Because the court granted Defendants' motion to file a supplemental opposition to issues raised for the first time in Plaintiff's reply (Dkt. # 18), the court grants Defendants' request to file a declaration in support thereof.

ORDER – 1

Frog Mobile, Inc. ("Blue Frog")[2] compete in the voice, text, and online "chat room" industry.  Both companies offer monetary incentives to third-party webmasters for providing links and banners that entice users to purchase the "chat" products; the webmasters, in turn, receive a commission for each sale.  The industry refers to such business arrangements as "affiliate programs."

RxSales has been using the trademark and trade name of "ChatDollars" for two or more years to promote its affiliate programs.  In January of 2004, RxSales filed a trademark application with the U.S. Patent and Trademark Office ("PTO").  RxSales successfully registered ChatDollars on the PTO's principal register on December 13, 2005 and with the Washington State Department of Licensing, the date of which is unclear from the record.  In addition to links on its affiliate websites, RxSales promotes its services on its own chatdollars.com website.

Blue Frog uses the name "Blue Frog Bucks" to promote its affiliate programs and chat-related services, including on its website bluefrogbucks.com.  On or around December 30, 2005 – just after RxSales registered its trademark with the PTO – Blue Frog registered the domain names smschatdollars.com and smschatdollars.net and began using the name SMS[3] ChatDollars in association with its program.

RxSales now seeks to enjoin Blue Frog from using the alleged infringing mark, SMS ChatDollars, and requests the court to order Blue Frog to transfer ownership of the domain names smschatdollars.com/.net to RxSales.

---

[2]RxSales also names Blue Frog company president, Ian Eisenberg, as a Defendant.  In opposition, Blue Frog argues that Mr. Eisenberg is not a proper Defendant.  This issue is not properly before the court on Plaintiff's motion for a preliminary injunction and the court declines to address it.

[3] The acronym "SMS" stands for "short message service."

ORDER – 2

### III.  DISCUSSION

A plaintiff is entitled to a preliminary injunction in a trademark case when she demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in her favor.  Goto.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205, (9th Cir. 2000) (internal citations and quotations omitted).  The Ninth Circuit conflates the two factors under the first standard, and thus, a plaintiff is entitled to injunctive relief in a trademark case simply when she shows a likelihood of confusion.  Id. at 1205, n. 5.

**A.    Likely Success on the Merits**

A successful trademark infringement claim under the Lanham Act requires a showing that the claimant holds a protectable mark, and that the alleged infringer's imitating mark is similar enough to cause confusion in the minds of consumers about the origin of the goods or services in question.  KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117 (2004).

**1.    A Protectable Mark**

Blue Frog contends that RxSales is not likely to prevail on the merits of its infringement claim because, at the threshold, ChatDollars is not a protectable mark.  Blue Frog asserts two theories: (1) the mark is subject to cancellation for fraud or (2) the mark is invalid because it is generic or merely descriptive.  Either way, Blue Frog bears the burden of proof to show that the mark is somehow invalid.  L.D. Kichler Co. v. Davoil, Inc., 192 F.3d 1349, 1351 (Fed. Cir. 1999) (proof by clear and convincing evidence to show trademark obtained by fraud); Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925 (9th Cir. 2005) (proof by preponderance to show that the trademark is generic).

ORDER – 3

Given the presumption in favor of validity and the burden on Blue Frog to show otherwise, the court concludes that RxSales has shown a likelihood that it holds a protectable mark.  In order to prevail on its fraud claim, Blue Frog bears the burden to show that RxSales knowingly made false, material representations of fact in connection with its application.  <u>Torres v. Cantin Torresella</u>, 808 F.2d 46, 48 (Fed. Cir. 1986); <u>see also</u> <u>Robi v. Five Platters, Inc.</u>, 918 F.2d 1439, 1444 (9th Cir. 1990).  In support of its contention, Blue Frog points to allegedly false statements made in the specimen accompanying RxSale's trademark registration application.  Specifically, Blue Frog contends that the specimen indicates the use of the mark solely in the context of an affiliate program, whereas the goods for which RxSales applied for trademark registration include three classes, roughly summarized as: affiliate programs, telephone communication services, and online chat services.  Although the specimen does appear limited to describing the mark in association with an affiliate program, Blue Frog must also demonstrate RxSales' willful intent to deceive by clear and convincing evidence.  <u>Davoil</u>, 192 F.3d at 1351; <u>see also</u> <u>Robi</u>, 918 F.2d at 1444 (defendant-company president admitted knowing of a prior adverse decision at the time she submitted an incontestibility affidavit to the PTO in which she swore that the reverse was true).

Here, RxSales' managing member and trademark applicant,[4] Lisa Stevens, declares that she believed at the time of application that the specimens were accurate.  Blue Frog does not present any evidence of a contrary intent, instead Blue Frog argues that Ms. Stevens' declaration is irrelevant as she did not sign the application; rather, her attorney signed it.  Blue Frog argues that Ms. Stevens' attorney knew or should have known that the specimens did not show two of the classes of goods claimed in the application.  Still,

[4]RxSales trademark application names Ms. Stevens as the mark owner.  Mot. for Supp. Decl, Newman Decl., Exh. C at 2.

ORDER – 4

regardless of a false statement, there is no evidence in the record from which to infer an intent to deceive on the part of Ms. Stevens or her attorney.  Moreover, Blue Frog does not address whether the misrepresentation, if any, was material.  The court rejects Blue Frog's attempt to shift its heavy burden to RxSales to demonstrate fraud (or the absence thereof) and therefore, concludes that Ms. Stevens declaration concerning her intent – as the trademark applicant – overcomes Blue Frog's bare allegation of misrepresentation.

As to invalidity based on "genericness" or "descriptiveness," the court begins with the strong presumption of validity of a registered mark.  See 15 U.S.C. § 1057(b).  Against this backdrop the court evaluates whether a mark is invalid on the basis that it is generic under the Ninth Circuit's "who-are-you/what-are-you" test.  Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc., 198 F.3d 1143, 1147 (9th Cir. 1999).  A trademark fails the test if its "primary significance" is to "describe the *type of product* rather than [its] *producer*."  Id. (citation omitted).  A court must take a "holistic approach" in conducting the test.  Id. at 1149.  In particular, although the court should consider the dictionary definition of the words comprising a trademark, it must not adopt the overly simplistic view that a generic term plus a generic term equals a generic trademark.  Id. at 1150.  Here, Blue Frog points to evidence demonstrating the relatively common use of the term "dollars" to describe affiliate programs.  Still, while "chat" and "dollars" may be generic on their own, it does not follow that simply joining the two terms indicates a generic mark.  Id.  Blue Frog has not overcome the presumption of validity by a preponderance of evidence to show that the *combination* of chat and dollars is generic.  For the same reason, the court rejects Blue Frog's substantially similar argument that the term fails as being merely descriptive.  Accordingly, the court concludes that Rx Sales has shown a likelihood that it is entitled to a presumption of validity.

ORDER – 5

### 2.    Likelihood of Confusion

In addition to showing a likelihood that it possesses a protectable mark, RxSales must establish that Blue Frog's SMS ChatDollars is likely to confuse customers about the source of the products.  On a preliminary injunction motion, RxSales must show that it is likely to prevail that there is a likelihood of confusion.

The eight factors first announced in AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979), guide the court's analysis.  The Sleekcraft factors are:

> (1)  the similarity of the marks;
> (2)  the marketing channels used to promote the marks;
> (3)  the relatedness of the goods or services promoted under the marks;
> (4)  the strength of the plaintiff's mark;
> (5)  evidence of actual confusion;
> (6)  likelihood of expansion of either parties' product lines;
> (7)  the degree of care a potential purchaser is likely to exercise; and
> (8)  the defendant's intent in selecting the mark.

Id.; GoTo.com, 202 F.3d at 1205. In the context of the Web, the three most important Sleekcraft factors for determining likelihood of confusion are (1) similarity of the marks (2) relatedness of the goods or services and (3) the simultaneous use of the Web as a marketing channel.

RxSales has demonstrated that it is likely to prevail on showing a likelihood of confusion on the part of consumers.  First, the marks are similar.  The only distinguishing features between the two is the acronym "sms."  See SMC Promotions, Inc. v. SMC Promotions, 355 F. Supp. 2d 1127, 1135-36 (C.D. Cal 2005) (defendant does not avoid confusion by appropriating an entire mark and simply adding additional matter to it). Second, it is undisputed that the parties provide related goods and services.  Third, both rely heavily (if not exclusively) on the Web for marketing their products.  The Ninth Circuit has consistently recognized that marks used on the Web exacerbate the likelihood of confusion on the part of the consumer.  GoTo.com, 202 F.3d at 1207; Brookfield Communs., Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1057 (9th Cir. 1999).

ORDER – 6

Because the court finds a likelihood of success on the merits of RxSales trademark infringement claim, the court presumes irreparable harm. <u>Brookfield</u>, 174 F.3d at 1057. The court need not reach the cybersquatting claim as the request for relief is commensurate with the relief sought for the trademark infringement cause of action.

**B.   Scope of Injunctive Relief**

The court is presented with the somewhat unusual situation on a preliminary injunction motion where the non-moving party (Blue Frog) has agreed to cease use of the allegedly infringing mark.  Blue Frog contends that, in a gesture of good will, it ceased use of the SMS ChatDollars mark after less than 30 days of use.  Blue Frog also indicates that it has offered to transfer the <u>smschatdollars.com</u>/<u>.net</u> domain names to RxSales.  In reply, RxSales contends that it has tried to gain ownership of the domain names but that it needs Blue Frog's cooperation to do so.  In surreply, Blue Frog reiterates its intention to cooperate.

RxSales also indicates that, as of mid-March, it found reference to SMS ChatDollars on Blue Frog's website.  Blue Frog, in surreply, avers that it deleted all reference to "SMS ChatDollars" immediately once RxSales brought the issue forth in its briefing.  Blue Frog indicates that the three outlying references to SMS ChatDollars on its website were simply inadvertent, typographical errors that it has now remedied.  At present, Blue Frog appears to use "SMS Chat Bucks" to promote its program, not SMS ChatDollars.  Finally, RxSales contends that it has discovered references to the alleged infringing mark, SMS ChatDollars, on other, third-party web pages. RxSales' counsel, at oral argument, conceded that the court lacked any power to enjoin non-parties to the instant action.  Based on the above, the court held oral argument with every reason to believe that the parties were at or near agreement in resolving the pending motion, if not

ORDER – 7

the lawsuit in its entirety.  The parties failed to reach agreement, necessitating the court's intervention.

The courts notes that the voluntary cessation of allegedly illegal conduct does not render an injunction moot, unless "the reform of the defendant [is] irrefutably demonstrated and total."  Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135-36 (9th Cir. 1986).  In Polo Fashions, the Ninth Circuit held that plaintiffs are not required to present specific evidence demonstrating that defendants will continue infringing in the future.  Id. at 1132.  Rather, "[i]f the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [the plaintiff] substantial protection of its trademark."  Id. at 1135-36.  Although the court applauds Blue Frog for agreeing to cease use of the alleged infringing mark, the court concludes that, under Polo Fashions, an injunction is warranted to protect against future use – especially where Blue Frog has indicated a total absence of hardship based on the mere twenty dollars it previously made using the alleged infringing mark and its subsequent cessation of use. Id.  Further, where a plaintiff has shown a likelihood of confusion as to using an alleged infringing mark as a domain name, as here, it is appropriate to order a transfer of ownership of that domain name.  Caesars World, Inc. v. Milanian, 247 F. Supp.2d 1171, 1206 (D.Nev. 2003) (citing 15 U.S.C. § 1125(d)(2)(D)).

For the foregoing reasons and pursuant to Fed. R. Civ. P. 65, the court orders the following:

1.  Defendant Blue Frog and its representatives and employees are enjoined from using the ChatDollars mark, or any marks confusingly similar thereto, including "SMS ChatDollars," as a service mark, trademark, trade name, or domain name – either alone or in combination with other words, symbols, or the like.

2.  Defendant Blue Frog must transfer the domain names smschatdollars.com and smschatdollars.net within ten business days from the date of this order. Blue Frog shall pay any transfer fees necessary to accomplish the transfer.

ORDER – 8

1   Lastly, the court concludes that a bond of $1,000 is required as security in the

2   event that Blue Frog is wrongly enjoined.  Blue Frog's request of $1,000,000 is wholly

3   unreasonable in light of its admission that it never actively marketed its products with the

4   alleged infringing mark and only made twenty dollars from its use.

5                              **IV.  CONCLUSION**

6   For the reasons stated above, the court GRANTS Plaintiff's motion for a

7   preliminary injunction (Dkt. # 2) and GRANTS Defendants' motion to file a

8   supplemental declaration in support if their supplemental response (Dkt. # 20).

9   DATED this 6th day of June, 2006.

10

11

12                                          _____

13                                          JAMES L. ROBART
                                            United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER – 9